# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Civil Action No. 12 C 7380 |
| | ) Criminal Action No. 06 CR 562 |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| | ) |
| SALEM FUAD ALJABRI, | ) |

**OPINION AND ORDER**

Before the Court is Petitioner Salem Fuad Aljabri's ("Aljabri") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. Aljabri argues that he is entitled to a new trial based on alleged violations of the Equal Protection Clause of the Fifth Amendment pursuant to Batson v. Kentucky, 476 U.S. 79 (1986). For the following reasons, the motion is denied.

## I. BACKGROUND

On March 22, 2007, Aljabri was charged in a twenty-five count superseding indictment for his role in a scheme to defraud the government and collect money from the United States Department of Agriculture Food and Nutrition Service's Food Stamp Program by purchasing food stamps from customers for discounted amounts of cash. United States v. Aljabri, 363 F. App'x 403, 404 (7th Cir. 2010). On May 24, 2007, a jury convicted Aljabri of nine counts of wire fraud in violation of 18 U.S.C. § 1343, five counts of money laundering pursuant to 18 U.S.C. § 1956(a)(1)(A)(i), and ten counts[1] of structuring under 31 U.S.C. § 5324(a)(3). On September 25, 2007, he was sentenced to 90 months' imprisonment. However, on appeal, the

---

[1] Although Aljabri was originally charged with eleven counts of structuring, prior to the verdict, the Court granted the government's motion to dismiss one of the structuring counts, Count 14 of the superseding indictment.

Seventh Circuit vacated Aljabri's conviction on the five counts of money laundering and remanded his case for resentencing. Id. at 408.

On February 28, 2011, while his criminal case was pending in this Court for resentencing, Aljabri filed a § 2255 motion seeking to vacate, set aside or correct his sentence. See United States v. Aljabri, No. 11-CV-1389 (N.D. Ill. filed Feb. 28, 2011). On June 17, 2011, the Court sentenced Aljabri to 84 months' imprisonment on the remaining nineteen counts. Aljabri once again filed a notice of appeal. Shortly thereafter, the government moved to dismiss Aljabri's § 2255 motion without prejudice as untimely because it was filed while his criminal case was still pending in the district court for resentencing. On September 26, 2011, the Court granted the government's motion to dismiss Aljabri's untimely § 2255 motion without prejudice.

On appeal, the Seventh Circuit once again remanded Aljabri's sentence due to a clerical error in the amount of the special assessment. See United States v. Aljabri, 476 F. App'x 85, 86 (7th Cir. 2012). The judgment was amended to reflect the proper amount on April 24, 2012. Following the conclusion of his direct appeal, Aljabri filed the instant § 2255 motion to vacate, set aside, or correct his sentence, alleging that the government committed Batson violations in exercising their peremptory challenges during jury selection. Specifically, Aljabri alleges that the government improperly struck two African-American women from the jury venire. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. This is an extraordinary remedy because a petitioner seeking

§ 2255 relief has already "had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Specifically, § 2255 states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). If a petitioner is able to successfully assert the aforementioned grounds, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

Post-conviction relief under § 2255, however, "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). In deciding a § 2255 motion for post-conviction relief, "evidence and inferences drawn from it are viewed in a light most favorable to the government." United States v. Galati, 230 F.3d 254, 258 (7th Cir. 2000).

**B. Alleged Batson Violations**

*1. Procedural Default*

It is well-established that "[a] § 2255 petition is neither a recapitulation nor a substitute for a direct appeal." McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996) (internal quotation marks and citation omitted); see also United States v. Fleming, 676 F.3d 621, 625 (7th Cir. 2012). Accordingly, a petitioner is barred from raising constitutional issues in a § 2255 motion if those issues could have been challenged and decided on direct appeal. Here, it is undisputed that Aljabri raises his Batson challenges on collateral review for the first time.

3

Therefore, his claims are procedurally defaulted. Although, Aljabri can overcome the procedural default if he can show "good cause for failing to raise the issue and actual prejudice" or "that a refusal to consider the issue would be a 'fundamental miscarriage of justice.'" Galbraith v. United States, 313 F.3d 1001, 1006 (7th Cir. 2002) (quoting Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996)). Because Aljabri does not allege actual innocence, the Court need not consider whether a fundamental miscarriage of justice would result should his relief be foreclosed by the default. Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004). However, the Court may consider Aljabri's Batson challenges for the first time on collateral review if he can show both good cause for the default and that prejudice would result should he be denied relief. Id. The government concedes that prejudice would be assumed if Aljabri is able to prove that it exercised its peremptory challenges in a racially discriminatory manner because "[t]he parties, the jurors, and society as a whole have a right to be free from intentional discrimination in the use of peremptory challenges." United States v. Stephens, 514 F.3d 703, 709 (7th Cir. 2008). As to good cause for failing to raise the issue earlier, Aljabri argues that he received ineffective assistance of counsel. Specifically, Aljabri argues that his trial counsel was ineffective for failing to raise Batson challenges during jury selection, and his appellate counsel was ineffective for failing to raise the same issue on appeal.

### 2. *Ineffective Assistance of Counsel*

First, the Court turns to whether Aljabri can demonstrate good cause for his default by establishing that he received ineffective assistance of counsel. "The right to counsel is the right to effective assistance of counsel." Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012). To prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense."

4

Strickland v. Washington, 466 U.S. 668, 687 (1984). Because the Strickland test requires both deficient performance and prejudice, an ineffective assistance of counsel claim can fail for lack of prejudice "without ever considering the question of counsel's actual performance," and vice versa. United States v. Taylor, 569 F.3d 742, 748 (7th Cir. 2009) (citations omitted).

In order to establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 688)). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Sussman v. Jenkins, 636 F.3d 329, 349 (7th Cir. 2011) (quoting Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal quotation marks and citation omitted)). "An appellate counsel's performance is deficient if [he] fails to argue an issue that is both obvious and clearly stronger than the issues raised. However, counsel is not required to raise every nonfrivolous issue on appeal." Brown v. Finnan, 598 F.3d 416, 425 (7th Cir. 2010) (internal citations omitted). "Importantly, '[j]udicial scrutiny of counsel's performance must be highly deferential,' indulging a 'strong presumption' of effectiveness to combat 'the distorting effects of hindsight.'" Atkins v. Zenk, 667 F.3d 939, 944-45 (7th Cir. 2012) (quoting Strickland, 466 U.S. at 689) (alteration in original). In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Brown, 598 F.3d at 425 ("To prevail, [petitioner] must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised.").

5

To establish prejudice here, Aljabri must show that it is reasonably probable that his Batson claims would have been successful had they been raised by his various counsel at trial or on direct appeal. Therefore, the Court looks to the validity of Aljabri's Batson claims to determine whether he can sufficiently establish prejudice resulting from his alleged ineffective assistance of counsel.

It is well-established that "[t]he use of a peremptory strike to remove a potential juror solely because of his or her race violates the Equal Protection Clause." United States v. Taylor, 636 F.3d 901, 904 (7th Cir. 2011) (citing Batson, 476 U.S. at 91). Courts evaluate Batson claims using a three-step inquiry: "(1) the defendant makes a prima facie case of discrimination; (2) the government provides a race-neutral explanation for the peremptory strike; and (3) the court decides whether the defendant has established that the government's stated reason is pretext for discrimination." Id. at 904-905 (citing Batson, 476 U.S. at 94-98).

In order to establish a prima facie case of discrimination for a Batson claim, a defendant must produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred" in the government's exercise of its peremptory challenges. United States v. Stephens, 421 F.3d 503, 512 (7th Cir. 2005) (quoting Johnson v. California, 545 U.S. 162, 170 (2005)); see also Bennett v. Gaetz, 592 F.3d 786, 791 (7th Cir. 2010) ("[T]he defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" (quoting Batson, 476 U.S. at 94)). "[T]he burden at the *prima facie* stage is low, requiring only circumstances raising a suspicion that discrimination occurred, even when those circumstances are insufficient to indicate that it is more likely than not that the challenges were used to discriminate." Stephens, 421 F.3d at 512.

Aljabri focuses his Batson claims on four jurors—two Caucasian women, Juror 31 and Juror 36, and two African-American women, Juror 3 and Juror 19—all of whom received food stamps or other government assistance at some point in their lives. Aljabri alleges that the government exercised its peremptory challenges in a racially discriminatory manner because it stuck Jury 3 and Juror 19 from the jury venire, but not Juror 31 or Juror 36.

As an initial matter, the government does not contest that Juror 3 and Juror 19 were African-American, and that Juror 31 was Caucasian. However, the government states that it has no independent recollection of, and the record does not reflect the race of Juror 36, or any of the other jurors in the venire. Nor does Aljabri present any evidence as to the race of Juror 36 or any other juror, aside from his conclusions that Juror 31 and Juror 36 were Caucasian and Juror 3 and Juror 19 were African-American. Ultimately, it is Aljabri's burden to establish his ineffective assistance of counsel claim with more than unsubstantiated or conclusory statements. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

Aljabri predicates his entire prima facie case on the allegation that the government struck two African-American jurors who received government aid, but not two allegedly Caucasian jurors who received government aid. In so arguing, Aljabri does not allege that, aside from their receipt of public aid at some point in their lives, the women were otherwise similar. The government contends that the jurors were not similar in any meaningful way, even in their type of public aid received or the timeframe in which they received it. Juror 3 stated that she had received government assistance, but did not indicate what kind or when she received it. Although the government asked the Court to inquire further as to the assistance which Juror 3 received and when she received it, the Court declined. The government used a peremptory strike on Juror 3. Juror 19 stated that she currently received food stamps and had received such

benefits for four years. The government also used a peremptory strike on Juror 19. While not mentioned by Aljabri, Juror 14—of an unknown race—also disclosed that she had received public aid. Juror 14 stated that she had received food stamps in 1988 and housing assistance from 2001 to 2005. Juror 14 was stricken by the government. Juror 31 stated that she had received food stamps for three months in 1969—many years before the program turned into an electronic debit card system like the one Aljabri used in his scheme to defraud the government. The government did not move to strike Juror 31; she was stricken by Aljabri's co-defendant, Hope Cordova. Juror 36 stated that she had received government assistance, but not in the last six years. While Juror 36 did not specify the type of aid that she received, the government notes that as the last juror questioned, she was only slotted to be the second alternate juror and, before inviting or hearing possible challenges, the Court told the parties that if any more jurors were stricken, they would not have enough to proceed to trial. Accordingly, Juror 36 was not stricken by any party and she became the second alternate juror.

The record, as stated above, does not raise a suspicion that the government exercised its peremptory strikes in a racially discriminatory manner. The record, consistent with the Court's recollection, suggests that the government sought to eliminate all potential jurors who had experience with the modern food stamp system, which was at issue during trial. Indeed, only one potential juror with a history of government assistance, Juror 36, made it onto the jury as the second alternate, and only after the Court alerted the parties that she was the last juror and that one final spot on the jury needed to be filled in order to proceed to trial. Furthermore, while Aljabri states that Juror 36 was Caucasian, the government does not recall Juror 36's race, and Aljabri puts forth no evidence to support his conclusion. Also, Aljabri fails to acknowledge Juror 14, who also disclosed a history of public aid and was stricken by the government.

Because Aljabri fails to meet his burden to raise a suspicion of discrimination, he consequently fails to show that his Batson claim was reasonably likely to succeed had it been raised by his trial or appellate counsel. Therefore, Aljabri is unable to establish that he was prejudiced by any allegedly deficient performances of his trial and appellate counsel. Consequently, he fails to establish a claim for ineffective assistance of counsel. Finally, because Aljabri fails to establish a claim for ineffective assistance of counsel, he is unable to establish good cause to proceed on his otherwise procedurally defaulted Batson claims. Thus, Aljabri's motion pursuant to § 2255 motion is denied.

### III. CONCLUSION

For the foregoing reasons, Aljabri's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied. The Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 30, 2013